UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil Action No. 0:24-cv-1861

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ANOKA, MINNESOTA,<br><br>Defendant. | **COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. The United States of America brings this suit against the City of Anoka, Minnesota (the City or Defendant) to enforce Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–12134, as amended, and Title VIII of the Civil Rights Act of 1968, as amended (Fair Housing Act or FHA), 42 U.S.C. §§ 3601–3631. The United States respectfully alleges as follows:

2. Since at least September 2018 to the present, Defendant has denied individuals with mental health disabilities and those associated with them an equal opportunity to benefit from its emergency response service and subjected them to discrimination in violation of the ADA and the FHA. Defendant provides an emergency response service that individuals can access at any hour when they need critical medical care or other assistance during a crisis. Through the enforcement and implementation of its "Rental Licensing and Crime Free Housing" ordinance, however, Defendant can and

1

does classify some calls for emergency service as a "nuisance" even if the call was placed for a medical emergency. Defendant has told tenants with mental health disabilities who have called emergency services that they risk eviction if they make future calls. And Defendant has pressured landlords to evict residents because of calls for emergency service, even though such calls were due to the residents' mental health disabilities. Landlords who fail to evict residents risk the City suspending or terminating their rental license under the ordinance.

3. Through these actions, Defendant has denied and discouraged residents with mental health disabilities, and those associated with them, from exercising their right to request necessary emergency service from the City. And through the threat of eviction contained in the ordinance, Defendant has conditioned the safety and security of the housing of residents with mental disabilities on their willingness to forgo seeking necessary emergency services and medical care.

4. From at least 2018 through mid-2023, Defendant also compiled "Calls for Service Reports," weekly reports that the City sent to all landlords in its jurisdiction detailing all calls for emergency service from all rental properties. In these Calls for Service Reports, Defendant disclosed, without consent, confidential medical information about individuals with mental health disabilities who required emergency service in the City during the timeframe covered by the report, including their diagnoses, medications, names of their medical providers, and details about suicide attempts. Defendant continues to compile these reports and makes them available on request to landlords. Defendant's

distribution of these Calls for Service Reports to all landlords in the City discouraged, and continues to discourage, individuals with mental health disabilities and those associated with them from calling for help during emergencies. Individuals with mental health disabilities refrain from calling emergency services to avoid risking their current or future housing prospects and having their confidential medical information shared with landlords.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 42 U.S.C. § 12133, 42 U.S.C. § 3614, and 28 U.S.C. §§ 1331 and 1345.

6. The Court may grant the relief sought in this action under 28 U.S.C. §§ 2201–2202, 42 U.S.C. § 12133, and 42 U.S.C. § 3614(d).

7. The United States has authority to seek remedies for violations of Title II of the ADA, 42 U.S.C. § 12133; 28 C.F.R. pt. 35, subpt. F, and for violations of the FHA, 42 U.S.C. § 3614(a). The United States of America brings this action to enforce the rights of individuals with disabilities and those associated with them.

8. Venue is proper in this district under 28 U.S.C. § 1391, because Defendant resides in this district and a substantial part of the events giving rise to this action occurred in this district.

## PARTIES

9. Plaintiff is the United States of America.

10. Defendant, a political subdivision of the State of Minnesota, is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104 and is subject to Title II of the ADA and its implementing regulation.

11. Defendant is governed by a City Council, which consists of a Mayor and four Councilmembers. The City Council is the policy making body of the City. The City Manager serves as the Chief Executive Officer and the head of the administrative branch of the City government.

12. Defendant is responsible for the enactment, enforcement, and application of its City Code of Ordinances, including its Rental Licensing and Crime Free Housing ordinance, Anoka City Code §§ 50-49 to 50-68.

13. Defendant also provides an emergency response service that individuals within its jurisdiction can access at any hour when they need critical medical care or other assistance during a crisis.

14. Defendant is responsible for the acts of its agents and employees, including its City Council, City Manager, and Police Department.

## FACTS

**A. Defendant's Rental Licensing and Crime Free Housing Ordinance**

15. Defendant adopted its "Rental Licensing and Crime Free Housing" ordinance, or "nuisance ordinance," with the stated purpose of ensuring that residential

4

rental properties and their neighbors (1) have a safe, secure, and sanitary environment, (2) are free from "criminal activity, noise, nuisances or annoyances," and (3) are "[f]ree from reasonable fears about safety of persons and security of property." Anoka City Code § 50-49(a).

16. The nuisance ordinance requires landlords to have a license to operate a rental property. *Id.* § 50-51(a).

17. Landlords must certify that they have read the nuisance ordinance, that they conduct criminal background checks on prospective occupants, and that they include the Crime Free/Drug Free Addendum (discussed below) in any lease. *Id.* § 50-53(b).

18. Defendant's nuisance ordinance penalizes landlords for "nuisance calls" to their properties. *See id.* § 50-64.

19. The ordinance defines "nuisance call" as "any instance where law enforcement officers are called to a property in response to a valid complaint related to disorderly conduct." *Id.* § 50-50.

20. Defendant defines "disorderly conduct" to include nineteen categories of conduct. *Id.* One of these categories of "disorderly conduct" is "[r]epeated unfounded calls to police." *Id.*

21. Defendant creates an increasing penalty schedule for nuisance calls in any consecutive twelve-month period. After the first and second nuisance calls at the property, Defendant may notify the landlord. *Id.* § 50-64(1), (2). After the third nuisance call, the landlord must respond with a "written report of actions taken to abate further nuisances on

5

the property." *Id.* § 50-64(3). Failure to respond to the letter may result in a nuisance fee ($250 for the first notification and $500 for each subsequent notification). If the landlord fails to pay the nuisance fee or if the landlord receives a fourth nuisance call, Defendant may suspend the landlord's rental license for up to three months. *Id.* § 50-64(4). If there is another nuisance call, Defendant may revoke the landlord's rental license for up to one year. *Id.* § 50-64(5).

22. The nuisance ordinance provides that Defendant will not impose any adverse license action for nuisance calls that occur while the landlord is pursuing eviction proceedings or "within 30 days of notice given by the licensee to an occupant to vacate the rental dwelling unit." *See id.* § 50-64(8). Defendant can pursue adverse license action against a landlord when the landlord "fails to diligently pursue the eviction process." *Id.*

23. The nuisance ordinance also states that "[n]o adverse license action shall be imposed" where the calls were placed by a "residential occupant for police or emergency assistance in response to medical calls, domestic abuse or any other conduct." *Id.* § 50-64(8)(a)(2). The term "medical calls" is not defined in the ordinance. *See id.*

24. But the ordinance does not prohibit Defendant from designating such calls a nuisance and instead only requires that Defendant consider whether a call was for emergency medical assistance when considering whether to take adverse license action against a landlord. *See id.*

6

25. Under the nuisance ordinance, Defendant has deemed and can continue to deem calls for emergency service as a nuisance even when medical or disability-related issues are involved, such as calls for emergency service during mental health episodes.

### B. Defendant's Crime Free/Drug Free Lease Addendum

26. Defendant requires that landlords include a Crime Free/Drug Free Lease Addendum in their leases with tenants. *Id.* § 50-53(b)(9).

27. Defendant provides landlords with a model Crime Free/Drug Free Lease Addendum to include in their leases with tenants.

28. Defendant may revoke a landlord's rental license due to "[f]ailure to actively pursue the eviction of occupants who have violated the provisions of the crime free lease addendum." *Id.* § 50-59(c)(1)(h).

29. Defendant's model lease addendum requires tenants to agree that they, and members of their household, guests, or other invitees, will not engage in disorderly conduct, including making "repeated unfounded calls to police."

30. Defendant's model lease addendum also states that "[t]hree nuisance police calls for service involving the same tenancy within a continuous twelve-month period shall be a substantial and material violation to the lease and good cause for termination of the tenancy."

31. Defendant's model lease addendum makes no mention or reference to the ordinance's provision that prohibits adverse license action against a landlord when a tenant calls for medical service. *See id.* § 50-64(8)(a)(2).

7

32. Individuals with mental health disabilities who make three medical calls in a year could be deemed in violation of the Defendant's model lease addendum and face eviction.

### C. **Defendant's Public Disclosure of Individuals' Mental Health Disabilities and Confidential Medical Information**

33. From at least 2018 through mid-2023, Defendant sent weekly reports to licensed landlords in the City detailing all calls for emergency service from all rental properties. Defendant marked in yellow calls for service that Defendant deemed a "Nuisance Call for Service" or "NCFS."

34. Landlords were provided all Calls for Service Reports, not just descriptions of calls arising from incidents at their property.

35. Along with a general description, each Calls for Service Report includes the address of the incident as well as the names, addresses, ages, and for some reports, photos of those involved.

36. In at least 780 incidents in these Calls for Service Reports, Defendant revealed information about individuals' mental health disabilities, such as their diagnoses, medications, and names of psychiatric or medical providers. Defendant even shared intimate details about individuals' suicide attempts, such as the specific method used for the suicide attempt.

37. Defendant's Calls for Service Reports often provide identifying information about the person who called for emergency services for someone else in crisis.

8

38. The disclosure of medical and disability-related information about mental health crises and suicide attempts or threats is unnecessary for the safe operation of rental properties.

39. In fact, state law requires that Defendant withhold public access to calls for emergency service data to protect the identity of individuals when "the object of the call is to receive help in a mental health emergency." Minn. Stat. § 13.82 subd. 17(f).

40. Defendant used these Calls for Service Reports to notify landlords of tenants involved in incidents flagged as NCFS and encourage them to evict these tenants.

41. A landlord in the City said that, based on her communications with Defendant, she understands that if she does not evict tenants associated with the NCFS code, she could lose her rental license and all of her tenants would have to move out of her building.

42. Defendant also used the Calls for Service Reports to encourage landlords to screen potential tenants.

43. By sharing detailed information about residents' medical and mental health information in reports distributed to all Anoka landlords, Defendant provides residents' current and prospective landlords with information that landlords would likely otherwise be prohibited from seeking from rental housing applicants.

44. Defendant changed its practice in mid-2023 so that landlords can receive Calls for Service Reports on request but do not automatically receive the Reports as a matter of course. By sharing confidential information about individuals' mental health

9

disabilities with all landlords in the City, Defendant creates an arbitrary and unnecessary barrier to such persons exercising their right to access the City's emergency services. These persons risk eviction or future discrimination by landlords. The practice denies, limits, or makes unavailable housing or access to emergency services to persons with disabilities and persons associated with them because of disability or discourages such persons from seeking housing or emergency services in Anoka because of disability.

### D. Defendant's Enforcement of its Nuisance Ordinance

45. Defendant was more likely to mark a call as NCFS when Defendant identified that the call involved mental health issues even after controlling for whether the call involved other issues such as noise complaints, violence, or illegal drugs.

46. On numerous occasions, Defendant did not enforce its nuisance ordinance against individuals without mental health disabilities who engaged in similar activity as individuals with mental health disabilities.

47. Although Defendant's ordinance prohibits "repeated unfounded calls to police," Defendant frequently did not penalize individuals who repeatedly called for "unfounded" reasons but did not exhibit obvious mental health issues. In general, the weekly reports show that individuals, including tenants, frequently and routinely called to alert Defendant about complaints, disturbances, or criminal activity, such as suspicious individuals, vehicles, and noises. While there may have been valid reasons for these calls, police did not find evidence to support the claims for many of them. Yet Defendant often

responded to repeated "unfounded" calls from the same individuals and units and did not mark them as NCFS when such individuals did not have obvious mental health disabilities.

48.     For example, Defendant's police responded to 17 calls from an elderly tenant between November 2018 and February 2020 (with 14 calls in the first year).  Most of these calls related to the tenant's accidental use of a medical alarm and requests for assistance with tasks like finding glasses and using the bathroom.  Defendant never marked any of these calls as NCFS in the reports, and Defendant never sent the landlord or tenant a letter notifying them of any nuisance ordinance or Crime-Free/Drug-Free Lease Addendum violations.

49.     In contrast, Defendant penalized a tenant with a mental health disability for calling because of the tenant's delusions.  According to the Calls for Service Report, Defendant's police were dispatched to the apartment multiple times over three days in response to calls for service that included reports of seeing a suspicious person, hearing voices in a hallway where no one was present, and believing that someone had hacked the tenant's phone.  The police told dispatch that this person "has mental health issues" but was not a danger to himself or others.  Defendant flagged these calls as NCFS and sent a letter to the tenant's landlord instructing the landlord to evict the tenant for violating the nuisance ordinance.

50.     Similarly, while Defendant's nuisance ordinance states that one of its purposes is to ensure that residential properties are free from criminal activity, noise, or

11

"annoyances," *see* Anoka City Code § 50-49(a)(2), Defendant often did not mark these types of calls as NCFS when they did not involve mental health issues.

51. For example, Defendant's police were dispatched for a noise complaint, and when they arrived, the police confirmed that there were two intoxicated men in the apartment laundry room hitting the walls and door. In another incident, Defendant's police arrested an individual for stealing another person's phone at an apartment complex, and the individual became combative with police. The police needed to "use physical strength" to get this individual into their car and then the individual "kicked the rear passenger side door numerous times." Defendant did not mark these calls as NCFS in the reports.

52. In contrast, when an individual with a mental health disability resisted transport to a hospital, Defendant marked the call for service as NCFS. Her full name, age, address, and sex are included in the report.

E. **Complainants**

53. The Department of Justice has received complaints alleging that Defendant discriminates against qualified individuals with mental health disabilities and those associated with them and caused them significant harm.

54. For example, Complainant A, who has lived in the same apartment in Anoka for years, has a mental health disability and Post-Traumatic Stress Disorder (PTSD). Because of mental health crises, she called for emergency services twice. For both times that Defendant's police officers came to her apartment, Defendant included in Calls for Service Reports extremely sensitive information about her, including that she said she

12

planned to die by suicide, the hospital she was transported to, and the name and assessment of her therapist. Because of the effect that the Calls for Service Reports could have on her current and future housing prospects, she has refrained from calling for emergency service while feeling suicidal.

55. The Department of Justice also received complaints from landlords and housing providers, such as Complainant B. Complainant B operates several assisted living facilities in the City that serve people with disabilities. Defendant pressured Complainant B to evict one of her residents with mental health disabilities who, during a period of transition, called for emergency services at times because she had delusions about people coming to hurt her. Defendant's police officers knew that this resident had mental health disabilities and that her calls related to her disabilities. Yet Defendant's police officers told Complainant B, her staff, and the resident several times that additional calls would result in fines or other penalties. This led Complainant B and her staff to discourage the resident from calling the police, and the resident grew fearful of calling the police. Complainant B refused to evict this resident, and the resident's symptoms improved. Complainant B also complained about Defendant's sharing of medical and disability-related information about her residents with landlords in the City through Calls for Service Reports.

56. Defendant used its nuisance ordinance enforcement efforts to target multiple other tenants with mental health disabilities and their landlords. Multiple tenants were evicted due at least in part to calls for emergency service related to their mental health disabilities. Tenants and landlords have been and continue to be deterred from making

calls for emergency service because of fears that they will be evicted, fined, or otherwise punished. Tenants' confidential medical and disability-related information was or may be widely shared, which could lead to barriers securing new housing in the City.

57. Complainant A and other tenants and residents with mental health disabilities are qualified individuals with disabilities who are protected by Title II of the ADA and the FHA. These individuals' mental health disabilities are a physical or mental impairment that substantially limit one or more major life activities, including caring for oneself, sleeping, concentrating, and thinking. 42 U.S.C. § 12102(1)-(2); 28 C.F.R. § 35.108(b) (listing "mental or psychological disorder" and "emotional or mental illness" among other physical and mental impairments); 42 U.S.C. § 3602(h). They are also qualified individuals with disabilities who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendant. *See* 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104. The only essential eligibility requirement for receipt of Defendant's emergency response service is that an individual requests such service in Defendant's jurisdiction.

58. Complainant B and other individuals associated with individuals with mental health disabilities are protected by Title II of the ADA, because they have a known relationship or association with an individual with a known disability. 28 C.F.R. § 35.130(g). They are also protected under the FHA, because they are associated with,

provide services to, or rent their property to individuals with disabilities. 42 U.S.C. § 3604(f)(1)-(2).

59. Along with Complainants A and B, other persons have been harmed by Defendant's unlawful discrimination alleged herein.

### F. Harm to Individuals

60. Defendant denies qualified individuals with mental health disabilities and those associated with them an equal opportunity to benefit from Defendant's emergency response service and also denies them equal housing opportunities in violation of the ADA and FHA. People with mental health disabilities risk the loss of their housing, either through eviction or revocation of their landlords' rental license, if they exercise their right to use Defendant's emergency services. Such conduct subjects individuals to discrimination because of their disability or, in the case of landlords, because of the disability of their tenants.

61. Defendant discouraged and prevented individuals with mental health disabilities and those associated with them from using its emergency response service.

62. By making the Calls for Service Reports available to landlords in the City, Defendant harms individuals with mental health disabilities. The Calls for Service Reports reveal private information about individuals with mental health disabilities who are not engaging in activities that violate the law or a lease. To avoid such disclosures, individuals with mental health disabilities and those caring for them are deterred from calling the police and risking their current housing or future housing prospects. Tenants with mental health

disabilities can either use the service and have their mental health information shared publicly or not use the service at all.

63. Because of Defendant's actions, individuals with mental health disabilities and those associated with them suffered emotionally and physically through medical crises, mental health episodes, and other emergencies but could not call Defendant for emergency service due to their fear of losing their housing or having their confidential medical information exposed.

**FIRST CAUSE OF ACTION**
**Violation of Title II of the Americans with Disabilities Act**
**(42 U.S.C. §§ 12131–34)**

64. The foregoing paragraphs are incorporated herein.

65. All conditions precedent to the filing of this Complaint have occurred or been performed. *See* 28 C.F.R. pt. 35, subpt. F.

66. Defendant violates Title II of the ADA, 42 U.S.C. §§ 12131–34, and its implementing regulation, 28 C.F.R. pt. 35, by discriminating on the basis of disability. This includes denying qualified individuals with mental health disabilities and those associated with them an equal opportunity to participate in and benefit from its services, programs, or activities—including its emergency response service—and otherwise limiting them in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(a), (b)(1)(ii), (b)(1)(vii), (g).

67. Qualified individuals with mental health disabilities and those associated with them have been injured by and continue to be harmed and aggrieved by Defendant's

16

discriminatory conduct. These individuals allegedly suffered damages as a result of Defendant's conduct.

**SECOND CAUSE OF ACTION**
**Violation of the Fair Housing Act**
**(42 U.S.C. §§ 3601–3619)**

68. The foregoing paragraphs are incorporated herein.

69. The residential properties described above are all dwellings within the meaning of 42 U.S.C. § 3602(b).

70. The conduct of Defendant described above constitutes:

    a. A denial of housing or making housing unavailable because of disability, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f); and

    b. Discrimination in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of disability, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f).

71. The conduct of Defendant described above constitutes:

    a. A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, in violation of 42 U.S.C.§ 3614(a); or

    b. A denial to a group of persons of rights granted by the Fair Housing Act, which raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

72. Persons who were victims of Defendant's discriminatory practices include individuals with mental health disabilities and those associated with them. Such persons are aggrieved persons as defined in 42 U.S.C. § 3602(i) and allegedly suffered damages as a result of Defendant's conduct.

73. Defendant's conduct was intentional, willful, or taken with reckless disregard for the rights of others.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court:

A. Grant judgment in favor of the United States and declare that Defendant has violated the ADA and FHA;

B. Enjoin Defendant from engaging in discriminatory policies and practices against individuals with disabilities and those associated with them or otherwise violating the ADA and the FHA;

C. Order Defendant to take all affirmative steps to ensure compliance with the ADA and FHA, including steps necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate to the extent practicable the effects of their unlawful practices as described herein;

D. Order Defendant to take such affirmative steps as may be necessary to restore, as nearly as practicable, all aggrieved persons to the position they would have been in but for the discriminatory conduct;

E. Award monetary damages to all aggrieved persons;

F.  Assess a civil penalty against Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest; and

G.  Order such other appropriate relief as the interests of justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues, pursuant to Federal Rule of Civil Procedure 38.

Dated: May 21, 2024

ANDREW M. LUGER
United States Attorney
District of Minnesota


/s/ Bahram Samie
BAHRAM SAMIE (#392645)
Deputy Chief
United States Attorney's Office
District of Minnesota
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: (612) 664-5600
Fax: (612) 664-5788
Bahram.Samie@usdoj.gov

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief, Disability Rights Section

/s/ Christine Kim
ELIZABETH S. WESTFALL
Deputy Chief, Disability Rights Section
CHRISTINE KIM (DCRN 1044186)
Trial Attorney, Disability Rights Section
SARAH GOLABEK-GOLDMAN
(DCRN 1047833)
Trial Attorney, Disability Rights Section

TIMOTHY J. MORAN
Deputy Chief, Housing and Civil
Enforcement Section
ANNA PURINTON
Trial Attorney, Housing and Civil
Enforcement Section

Civil Rights Division
U.S. Department of Justice
150 M Street NE
Washington, DC 20530
Phone: 202-305-0043
Fax: 202-307-1197
Christine.Kim@usdoj.gov
Sarah.Golabek-Goldman@usdoj.gov
Anna.Purinton@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*