**EXHIBIT 1**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF ANOKA, MINNESOTA,<br><br>        Defendant | Civil Action No. 0:24-cv-1861<br><br><br>**CONSENT DECREE** |

## I.    INTRODUCTION

1.    This Consent Decree resolves the above-captioned civil action brought by Plaintiff United States of America against Defendant City of Anoka (the City) under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–34, as amended, and the Department of Justice's implementing regulation, 28 C.F.R. pt. 35, as well as the Fair Housing Act (FHA), 42 U.S.C. §§ 3601–3619.

2.    The United States initiated an investigation after receiving complaints alleging the City's administration of its nuisance ordinance and its Crime Free Multi-Housing Program discriminates against tenants with mental health disabilities and those associated with them, such as their landlords.  Complainants alleged that the City threatened tenants with mental health disabilities and those associated with them, including their landlords, with eviction or penalties after they sought emergency services, including for medical, mental health, or disability-related issues.  The United States also received complaints that the City sent weekly reports (Calls for Service Reports) to all landlords in

**EXHIBIT 1**

the City that revealed confidential medical information of adults and children with mental health disabilities involved in calls for emergency service at rental properties.

3.      On November 7, 2023, the United States issued its Findings and Conclusions based on its investigation.  The United States determined that individuals with mental health disabilities and those associated with them are denied an equal opportunity to benefit from the City's emergency response service and subjected to discrimination in violation of Title II of the ADA.  The United States also determined that the City's ordinance and its enforcement thereof subject persons to discrimination in their housing because of their disability or, in the case of landlords, because of the disability of their tenants, in violation of the FHA.  In Section III of the Findings and Conclusions, the United States set forth the remedial measures the City should implement promptly to come into compliance with the ADA and FHA.

4.      The City denies any wrongdoing or liability as asserted in the United States' November 7, 2023, Findings and Conclusions.  The City also denies all allegations asserted in the United States' Complaint in the above-captioned action.  However, the City desires to avoid any litigation and wishes to ensure its City Code and Nuisance Program comply with the ADA and FHA.

5.      The United States and the City (collectively, the Parties) agree that it is in the Parties' best interests, and the United States believes that it is in the public interest, to resolve this lawsuit on mutually agreeable terms.  Accordingly, to avoid additional cost and the uncertainty of litigation, the Parties agree to the entry of this Consent Decree

EXHIBIT 1

without trial or further adjudication of any issues of fact or law raised in the United States'
Complaint in the above-captioned action.

The Parties enter this Consent Decree and the Court hereby APPROVES, ENTERS,
AND ORDERS the following:

## II.    JURISDICTION AND VENUE

6.    Plaintiff is the United States of America.

7.    Defendant is a "public entity" under Title II of the ADA, 42 U.S.C.
§ 12131(1) and 28 C.F.R. § 35.104, and is therefore subject to Title II of the ADA, 42
U.S.C. §§ 12131–34, and its implementing regulation, 28 C.F.R. pt. 35.

8.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and
1345; the FHA, 42 U.S.C. § 3614; and Title II of the ADA, 42 U.S.C. § 12133.  The Parties
agree that venue is proper in this district under 28 U.S.C. § 1391(b) because the alleged
claim occurred in the District of Minnesota.

9.    The Court may grant the relief sought here under 28 U.S.C. §§ 2201–02, 42
U.S.C. § 12133, and 42 U.S.C. § 3614(d).

10.    The United States has authority to bring this action and seek remedies for
violations of Title II of the ADA, 42 U.S.C. § 12133; 28 C.F.R. pt. 35, Subpart F, and for
violations of the FHA, 42 U.S.C. § 3614(a).

## III.    DEFINITIONS

11.    "Landlord" means the owner or operator of a residential property who holds
a rental license from the City, including all licensees defined in Anoka City Code § 50-50.

**EXHIBIT 1**

12.     "Nuisance Ordinance" means the City's rental licensing and crime free housing ordinance at Anoka City Code §§ 50-49 to 50-68.

13.     "Crime Free/Drug Free Lease Addendum" means the addendum landlords are required to include in their leases with tenants under Anoka City Code § 50-53.

14.     "Crime Free Multi-Housing Program" or "CFMH Program" means the City's program with the stated purpose of reducing crime, illegal drugs, and nuisance activity in rental properties and includes training landlords must attend prior to obtaining or renewing a residential license under Anoka City Code § 50-51(c).

15.     "Calls for Service Reports" means the reports created by the City that describe the calls for emergency service and the City's response to each at all rental properties in the prior week.

16.     "Nuisance Program" means the City's Nuisance Ordinance, Crime Free/Drug Free Lease Addendum, CFMH Program, and Calls for Service Reports, as well as the City's policies, practices, and procedures and all activities related to enforcing or implementing the City's Nuisance Ordinance, Crime Free/Drug Free Lease Addendum, CFMH Program, and Calls for Service Reports.

17.     "Covered Personnel" means all City officials, administrators, staff, employees, contractors, volunteers, or agents involved in the City's Nuisance Program or emergency response service.

EXHIBIT 1

18.    "Aggrieved Persons" means individuals with mental health disabilities, as well as those associated with them, who have been harmed by the City's enforcement of its Nuisance Program and are eligible for relief under the FHA, 42 U.S.C. § 3614(d)(1).

## IV.    INJUNCTIVE RELIEF

19.    The City will comply with the requirements of Title II of the ADA, 42 U.S.C. §§ 12131–34, and its implementing regulation, 28 C.F.R. pt. 35, by ensuring individuals with mental health disabilities, and those associated with them, are provided an equal opportunity to benefit from the City's emergency response service and do not face discrimination in violation of the ADA.  The City shall not:

a. Exclude qualified individuals with mental health disabilities, and those associated with them, from participation in or deny them the benefits from its services, programs, or activities—including its emergency response service—or otherwise subject them to discrimination in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(a), (g);

b. Deny qualified individuals with mental health disabilities, and those associated with them, an equal opportunity to participate in or benefit from its services, programs, or activities—including its emergency response service —in violation of 28 C.F.R. § 35.130(b)(1)(i)-(ii), (g);

c. Otherwise limit qualified individuals with disabilities in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others—including

**EXHIBIT 1**

its emergency response service—in violation of 28 C.F.R. § 35.130(b)(1)(vii); and

d. Fail to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the City can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity, in violation of 28 C.F.R. § 35.130(b)(7)(i).

20. The City will comply with the FHA, 42 U.S.C. §§ 3601–3619. The City, its agents, employees, and all persons acting for or with them will not:

a. Discriminate in the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person, in violation of the FHA;

b. Discriminate in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with a dwelling, in violation of the FHA;

c. Adopt, maintain, enforce, or implement any laws, regulations, policies, procedures, or practices that discriminate, in violation of the FHA; or

d. Interfere with or retaliate against any person in the exercise or enjoyment of, or on account of any person exercising or enjoying, or aiding or encouraging another person in exercising or enjoying, any right protected by the FHA.

21. Nuisance Program Amendments: Within thirty (30) calendar days of the Effective Date of this Consent Decree, the City will submit Nuisance Program rules,

6

**EXHIBIT 1**

policies, practices, directives, protocols, and procedures—including a revised Crime Free/Drug Free Lease Addendum—to the United States for its review and approval, which will not be unreasonably withheld, providing for the following:

    a.  <u>Nondiscrimination</u>:  The City will ensure that its Nuisance Program does not discriminate against individuals with mental health disabilities and those associated with them in violation of the ADA or the FHA.  The City shall not deny individuals with mental health disabilities, and those associated with them, an equal opportunity to participate in or benefit from its emergency response service or otherwise subject them to discrimination.  The City shall not engage in any act or practice, directly or through contracting, licensing, or other arrangements, that has the purpose or effect of unlawfully discriminating against people with mental health disabilities, or those associated with them.  The City shall not designate mental health-related calls for emergency service, including calls arising from mental health-related crises and side-effects of medications to treat mental health disabilities, as a nuisance.  The City will not enforce its Nuisance Program to penalize or punish individuals with mental health disabilities or their landlords for calls for emergency service that arise from medical or disability-related reasons.  The City shall not publicize, broadcast, expose, or otherwise make public the disability, medical, and health information of

**EXHIBIT 1**

individuals with mental health disabilities through its Nuisance Program or otherwise in accordance with Paragraph 23.

b. <u>Reasonable Modifications and Reasonable Accommodations</u>:  The City shall make reasonable modifications to its Nuisance Program policies, practices, or procedures when necessary to avoid discrimination on the basis of disability under Title II of the ADA, <u>28 C.F.R. § 35.130(b)(7)</u>, and shall also make reasonable accommodations in accordance with the FHA, <u>42 U.S.C. § 3604(f)(3)(B)</u>.  For example, the City shall reasonably modify its policies, practices, and/or procedures of classifying conduct arising from mental health disabilities, or the treatment of mental health disabilities, as a nuisance.  The City will respond promptly, and no later than seven (7) business days, to disability-related requests for modifications or accommodations to its Nuisance Program to ensure equal opportunity for individuals with disabilities.  The City shall properly evaluate requests for modifications in accordance with Title II of the ADA and requests for accommodations in accordance with the FHA.  The City will have staff who have been trained, under Paragraph 25, evaluate such requests.  If the City denies an individual's request, the City will inform the individual that they may appeal to the ADA Compliance Officer, who must respond to the appeal within seven (7) calendar days of the appeal.

**EXHIBIT 1**

    c. <u>Anti-Retaliation and Anti-Interference</u>:  The City shall not discriminate against any individual because such individual has opposed any act or practice made unlawful by the ADA or the FHA or because such individual made a charge, testified, assisted, or participated in any way in an investigation, proceeding, or hearing under the ADA or the FHA.  The City shall not coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the ADA or the FHA.  The City shall not threaten or impose fines, adverse license actions, or any other penalty due to individuals with mental health disabilities seeking emergency services related to their disabilities or others seeking emergency services on their behalf.  The City shall not retaliate against or coerce any individual who seeks to exercise their rights under this Consent Decree or assist individuals with mental health disabilities in doing so, reports information to the United States related to this Consent Decree (including the dissemination of confidential medical information), or engages in protected activity under the ADA or FHA.

    d. <u>Complaints and Appeals</u>:  The City will ensure that formal and informal complaints and appeals by individuals who allege violations of the ADA or the FHA are promptly reviewed and addressed by appropriate action.

**EXHIBIT 1**

e. <u>Corrective Action</u>:    The City will take appropriate corrective actions, including disciplinary or other action against staff, to address any allegations the City subjected individuals with mental health disabilities or those associated with them to discrimination, retaliation, coercion, intimidation, harassment, threats, or abuse, or that the City engaged in retaliation or interfered with rights protected by the ADA or the FHA.

22.    <u>Implementation and Dissemination</u>:    Within thirty (30) calendar days of approval by the United States and throughout the term of the Consent Decree, the City will adopt and implement the policies, practices, and procedures identified in Paragraph 21.  In particular, the City will disseminate a copy of all approved policies, practices, and procedures to all Covered Personnel and post the amended policies, practices, and procedures to the City's homepage (www.anokaminnesota.com/), police department website    (www.anokaminnesota.com/157/Police-Department),    and    CFMH    program website    (www.anokaminnesota.com/278/Crime-Free-Multi-Housing-Program).    These websites shall also provide methods to provide feedback and complaints, including an accessible form and an email address to contact.

23.    <u>Confidentiality of Mental Health Information</u>:  The City shall not publicize, broadcast, expose, or otherwise make public the disability, medical, and health information of individuals with mental health disabilities through its Nuisance Program or otherwise. Upon the Effective Date, the City will suspend public dissemination of its Calls for Service Reports, or any similar report or information, unless and until the United States approves

**EXHIBIT 1**

the City's policies, practices, and procedures for safeguarding disability, medical, and health information in such reports. The City may not produce any information regarding the disability, medical, and health information of individuals with mental health disabilities when this production violates the ADA, FHA, or any other federal laws, even if it is "public data" under the Minnesota Government Data Practices Act.

      24.    <u>ADA Compliance Officer</u>:  The City will designate an ADA Compliance Officer. This individual will coordinate the City's efforts to comply with and carry out its responsibilities under the ADA, the FHA, and this Consent Decree.

      25.    <u>Covered Personnel Training</u>:  Within sixty (60) calendar days of the Effective Date, the City will submit the resume/CV of a proposed trainer(s) and proposed training materials to the United States for approval, which will not be unreasonably withheld. The trainer(s) will have substantive knowledge of Title II of the ADA and the FHA. Within thirty (30) calendar days of receiving approval from the United States of the trainer and training materials, and then annually, the City will provide mandatory training to all Covered Personnel.

        a.  The training will cover Titles II and V of the ADA, the disability-related protections of the FHA, and disability discrimination in general; how to identify when an emergency call may involve someone with a mental health disability; the City's revised policies, practices, and procedures under Paragraph 21, including (1) how to assess the need for and secure reasonable modifications or reasonable accommodations for individuals with mental

11

**EXHIBIT 1**

health disabilities under the Nuisance Program so that they are not penalized for calls for emergency service that arise from mental health-related reasons and (2) any new policies, practices, and procedures for safeguarding disability, medical, and health information in Calls for Service Reports; the roles and responsibilities of the City's ADA Compliance Officer; and this Consent Decree, including the steps that the City has taken, and will continue to take, to ensure that its obligations under this Consent Decree are met. The training materials will also (1) state that the City's Nuisance Program will not be implemented or enforced in a manner which penalizes or punishes tenants, residents, or landlords for calls for emergency service that arise from medical or disability-related reasons; (2) describe how to file a complaint and appeal a complaint with the City; and (3) provide information on the United States' ADA Information Line.

b. The initial training will be conducted live, either in-person or via remote meeting platform, with an opportunity to pose questions to the individual(s) conducting the training at the end of the training session. Each subsequent training may be conducted by video recording. The City will ensure all new covered personnel receive the video recorded training within thirty (30) calendar days of hire or retention, if this time period occurs more than thirty (30) calendar days before the next scheduled in-person training. The new covered personnel who did not receive live training as their first training

**EXHIBIT 1**

opportunity, shall be required to attend the next available in-person training

session.

26.    <u>Notification to Landlords</u>: Within sixty (60) calendar days of the Effective

Date, the City will submit proposed materials for dissemination to landlords to the United

States for approval, which will not be unreasonably withheld.   Within fourteen (14)

calendar days of receiving approval from the United States, the City will share these

materials with all landlords via electronic mail and regular mail.   The City will also share

these materials with landlords and rental license applicants during the initial application

stage, upon any renewal, and during all trainings relating to its CFMH Program.

a.   These materials will include information about: Title II and V of the ADA,

the disability-related protections of the FHA, and disability discrimination in

general;  the  City's  revised  policies,  practices,  and  procedures  under

Paragraph 21; the roles and responsibilities of the City's ADA Compliance

Officer; and this Consent Decree, including the steps the City has taken, and

will continue to take to ensure that its obligations under this Consent Decree

are met.   The materials will also (1) state that the City's Nuisance Program

will not be implemented or enforced in a manner that penalizes or punishes

tenants, residents, or landlords for calls for emergency service that arise from

medical or disability-related reasons; (2) explain how to file a complaint and

appeal  a  complaint  with  the  City  and  provide  information  on  the  United

States'  ADA  Information  Line;  and  (3)  provide  information  about  how

**EXHIBIT 1**

persons who may have been harmed by the City's enforcement of the Nuisance Program may contact the United States to be considered for settlement fund eligibility, until such time as the settlement fund has been disbursed.

b. The City shall also disseminate this information to a landlord whenever the City determines a call for emergency service at one of the landlord's properties should be designated as a nuisance under the City's nuisance ordinance or whenever the City takes any enforcement action against the landlord or the landlord's tenants under the Nuisance Program.

27.  <u>Notification to Tenants</u>: Within sixty (60) calendar days of the Effective Date, the City will submit proposed materials for tenants to the United States for approval, which will not be unreasonably withheld.  Within fourteen (14) calendar days of receiving approval from the United States, the City shall disseminate this information to a tenant whenever the City determines a call for emergency service related to the tenant should be designated as a nuisance under the City's nuisance ordinance or whenever the City takes any enforcement action against the tenant or those associated with the tenant, including the tenant's landlord, under the Nuisance Program.

a. These materials will include information about: Title II and V of the ADA, the disability-related protections of the FHA, and disability discrimination in general; the City's revised policies, practices, and procedures under Paragraph 21; the roles and responsibilities of the City's ADA Compliance

**EXHIBIT 1**

Officer; and this Consent Decree, including the steps that the City has taken, and will continue to take to ensure that its obligations under this Consent Decree are met. The materials will also (1) state that the City's Nuisance Program will not be implemented or enforced in a manner that penalizes or punishes tenants, residents, or landlords for calls for emergency service that arise from medical or disability-related reasons; and (2) explain how to file a complaint and appeal a complaint with the City and provide information on the United States' ADA Information Line.

## V.   MONETARY DAMAGES TO AGGRIEVED PERSONS

28.   Within thirty (30) calendar days of the entry of this Consent Decree, the City shall deposit $175,000 (the Settlement Fund) in a single interest-bearing bank account for the purpose of paying monetary damages to Aggrieved Persons. Any interest accruing to the account shall become a part of the Settlement Fund and be used as set forth in this Consent Decree. Within ten (10) calendar days of the establishment of the account, the City shall submit proof to the United States that the account has been established and the funds deposited. The City shall be solely responsible for any taxes assessed or owed on any interest earned on money deposited until the fund has been distributed.

29.   The United States shall identify Aggrieved Persons and verify their claim for compensation. To facilitate the identification of such individuals, the City will provide the United States with documents and information related to the enforcement of the Nuisance Program, including Calls for Service Reports, records kept of Nuisance Program violations,

**EXHIBIT 1**

enforcement letters sent to housing providers or tenants, and additional information upon request.

30.     Within six (6) months of the City sending the notifications to landlords and tenants required by Paragraphs 26 and 27, the United States will identify to the City the individuals who have been determined to be Aggrieved Persons and provide the City with information regarding the basis for each Aggrieved Person's eligibility.  The United States will also notify the Aggrieved Persons they have been identified as eligible to seek compensation from the Settlement Fund.

31.     Within fourteen (14) calendar days of receiving the information identified in Paragraph 30, the City will have the opportunity, but not the obligation, to submit sworn statements, documentary evidence (i.e. police reports), and/or a statement commenting on the merits of the claim.

32.     If the City elects to make a submission to a particular claim, the Aggrieved Person has the opportunity to submit supplementary evidence and/or a statement to the United States.

33.     The United States shall consider all objections and additional documentation raised by both the City and potential Aggrieved Persons.  The United States shall have full and final authority regarding the distribution of the Settlement Fund.   Once its determination is complete, the United States will provide the City with its final determinations for each Aggrieved Person and file a Notice of Fund Distribution with the Court.

**EXHIBIT 1**

34.    Within twenty-one (21) calendar days of the filing of the Notice of Fund Distributions, the City shall forward to the United States checks payable to the Aggrieved Persons in the amounts determined by the United States.

35.    After the United States receives a signed release (attached as Appendix A) from a particular Aggrieved Person releasing the City from all claims related to this action in exchange for monetary damages, it will distribute the settlement check to that person. The United States will provide a copy of all signed releases to the City following the distribution of the fund.

## VI.    MONITORING AND REPORTING

36.    <u>Reporting Requirements</u>:   Every six (6) months throughout this Consent Decree , the City will submit written reports to the United States, delineating all steps taken during the reporting period to comply with each substantive provision of this Consent Decree.  Each report will include the following for the preceding reporting period:

   a. <u>Nuisance Program Data</u>:   Detailed descriptions of all calls for emergency service the City designated as a nuisance under its Nuisance Ordinance, including (1) the dates and times of the calls, (2) names and addresses of all individuals involved, such as the tenant, landlord, and police officers, (3) the rationale for the nuisance designation, and (4) the outcomes of the City's designation of the calls as a nuisance, including whether the City provided notice to the landlord or tenant, threatened or levied fines, or rescinded a residential license and whether the tenant or residents were evicted.  If the

**EXHIBIT 1**

United States requests more information about these incidents, the City will provide such information within twenty-one (21) calendar days. Requested information may include all communications between the City and the landlord and/or tenants involved and any police reports referencing the calls for emergency service.

b. <u>Requests for Reasonable Modifications or Reasonable Accommodations</u>: A copy of every formal or informal request for a reasonable modification under Paragraph 21(b) or request for a reasonable accommodation under Paragraph 21(b) and the City's response to or resolution of the request.

c. <u>Confidentiality</u>: If disability, medical, or health information of an individual with a mental health disability obtained through the City's Nuisance Program or emergency response service was shared with any non-City individual or entity, an explanation of the circumstances that led to each prohibited disclosure.

d. <u>Complaints and Appeals</u>: A copy of every formal or informal complaint and appeal by an individual relating to disability-based discrimination in the City's Nuisance Program or emergency response service or any other issue covered by this Consent Decree, and the City's response to or resolution of the complaint and appeal.

e. <u>Training</u>: For all training required in Paragraph 25, the City will submit written reports detailing: the date and time of each training; a copy of the

18

**EXHIBIT 1**

agenda and materials (e.g., handouts, PowerPoint presentations) used for each training; and the names and titles of the individuals who attended the training.

f.  <u>All Other Relevant Documents</u>: All other documents requested by the United States relevant to this Consent Decree and to the United States' determination of the City's ongoing compliance with this Consent Decree.

## VII.  <u>ADDITIONAL TERMS</u>

37.  <u>Notification</u>:  All documents and communications required to be sent to the United States under this Consent Decree will be sent  by email to Christine Kim (christine.kim@usdoj.gov) and Sarah Golabek-Goldman (sarah.golabek-goldman@usdoj.gov) or by overnight courier to Christine Kim (202-305-0043), Disability Rights Section/Civil Rights Division, 4 Constitution Square, 150 M Street NE / 9th Floor, Washington, DC 20002.  The cover letter will include a subject line referencing the City of Anoka and DJ No. 204-39-198.

38.  <u>Effective Date and Term</u>:  The Effective Date will be the date that the Court approves and enters the Consent Decree or issues electronic notification that it has done so, whichever is later.  Unless otherwise specified, all time periods designated for an action run from the Effective Date.  This Consent Decree will remain in effect for three (3) years from the Effective Date.  The Court will retain continuing and exclusive jurisdiction for the duration of the Consent Decree to enforce the terms of the Consent Decree.  The United

**EXHIBIT 1**

States or the City may apply to the Court for such further orders as may be necessary for, or consistent with, the enforcement of this Consent Decree.

39. <u>Reviewing Compliance</u>:  The United States may review compliance with this Consent Decree at any time.  The City will cooperate fully with the United States' efforts to monitor compliance with this Consent Decree.  The City shall make policies, records (including police records related to calls for emergency service and enforcement of the Nuisance Program), personnel, and any other reasonably requested information available to the United States to facilitate the United States' monitoring of the City's compliance with this Consent Decree.

40. <u>Disputes</u>:  If the United States believes the City has failed to comply in a timely manner with any requirement of this Consent Decree, or that any requirement has been violated, the United States will notify the City in writing and the Parties will try to resolve the issue.  The City must respond to such notice as soon as practicable but no later than twenty-one (21) calendar days after.  The Parties will negotiate in good faith to resolve any dispute relating thereto; if the Parties cannot reach a mutually acceptable resolution within thirty (30) calendar days, the United States may seek court enforcement of compliance with this Consent Decree.  Nothing in this procedure will prevent the United States or the City from promptly bringing an issue before the Court when, in the moving Party's view, the facts and circumstances require immediate court attention.  The moving Party's written notice and court filing shall explain the facts and circumstances that require immediate court involvement.

**EXHIBIT 1**

41.  <u>Scope</u>:  This Consent Decree does not purport to remedy any violations or potential violations of the ADA, the FHA, or any other federal or state law, other than the violations alleged in the United States' Complaint, nor does it affect the City's continuing responsibility to comply with all provisions of the ADA and the FHA.  This Consent Decree will have no impact upon the rights or claims of any individual not identified in this Consent Decree who has made, or may make, claims against the City, even for issues addressed herein.  Nothing in this Consent Decree will preclude the United States from filing a separate action under the ADA, the FHA, or any other law, for any alleged violation not covered by this Consent Decree.

42.  <u>Entire Agreement</u>:  This Consent Decree contains the entire agreement between the United States and the City concerning the subject matter described in the United States' Complaint and November 7, 2023, Findings and Conclusions, and no other statement, promise, or agreement, either written or oral, made by any party or agent of any party, that is not contained in this Consent Decree, and concerns the subject matter described in the United States' Complaint and November 7, 2023, Findings and Conclusions, will be enforceable.

43.  <u>Modifications</u>:  The time frame for completion of any act required by this Consent Decree may be modified with the mutual written consent of the Parties, except that the termination date may be extended only by Order of the Court.  The United States will not unreasonably deny requested extensions, if made by the City before any deadline, and following the City's due diligence to meet such a requirement.  The Parties

**EXHIBIT 1**

acknowledge such written agreement may be completed by email so long as the email has specific language designed to bind either Party.

44.    <u>Severability</u>:  If any provision of this Consent Decree is found to be invalid, unenforceable, or otherwise contrary to applicable law, the other terms of this Consent Decree shall nonetheless remain in effect.

45.    <u>Binding</u>:  This Consent Decree will be binding on the Parties and their agents, employees, officers, and contractors.

46.    <u>Successor Liability</u>:  This Consent Decree is binding on the Parties and successors, including any successor mayor and city council members.

47.    <u>Non-Waiver</u>:  Failure by the United States to seek enforcement of this Consent Decree under its terms with respect to any instance or provision shall not be construed as a waiver to such enforcement with regard to any instances or provisions.

48.    <u>Litigation Holds</u>:  The United States and the City agree that, as of the date of entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described in the United States' Complaint.  To the extent that any of these Parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in the United States' Complaint and November 7, 2023, Findings and Conclusions, the Party is no longer required to maintain such a litigation hold.  Nothing in this Paragraph relieves any Party of any other obligations imposed by this Consent Decree.

**EXHIBIT 1**

49.    <u>Fees and Costs</u>:  Each of the Parties to this Consent Decree will bear its own costs and attorney's fees incurred in connection with this matter.

50.    <u>Publicly Available</u>:  A copy of this document will be made available to any person by the City on request.

51.    <u>Authority</u>:   The signatories represent they have the authority to bind the parties identified below to the terms of this Consent Decree.

52.    <u>Counterparts:</u>  This Consent Decree may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, will constitute the same Consent Decree.  Electronic or facsimile signatures are acceptable.

**EXHIBIT 1**

Dated: May 21, 2024

Respectfully submitted,


ANDREW M. LUGER
United States Attorney
District of Minnesota


/s/ Bahram Samie
BAHRAM SAMIE (#392645)
Deputy Chief
United States Attorney's Office
District of Minnesota
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: (612) 664-5600
Fax: (612) 664-5788
Bahram.Samie@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

REBECCA B. BOND
Chief, Disability Rights Section


/s/ Christine Kim
ELIZABETH S. WESTFALL
Deputy Chief, Disability Rights Section
CHRISTINE KIM (DCRN 1044186)
Trial Attorney, Disability Rights Section
SARAH GOLABEK-GOLDMAN
(DCRN 1047833)
Trial Attorney, Disability Rights Section

TIMOTHY J. MORAN
Deputy Chief, Housing and Civil
Enforcement Section
ANNA PURINTON
Trial Attorney, Housing and Civil
Enforcement Section

Civil Rights Division
U.S. Department of Justice
150 M Street NE
Washington, DC 20530
Phone: 202-305-0043
Fax: 202-307-1197
Christine.Kim@usdoj.gov
Sarah.Golabek-Goldman@usdoj.gov
Anna.Purinton@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*

24

**EXHIBIT 1**

**FOR THE CITY OF ANOKA:**

<u>/s/ Phil Rice</u>
PHIL RICE
Mayor
City of Anoka
Anoka City Hall
2015 First Avenue
Anoka, MN 55303
Phone: 763-576-2700

<u>5/20/24</u>
Date

<u>/s/ Amy Oehlers</u>
AMY OEHLERS
Assistant City Manager & City Clerk
City of Anoka
Anoka City Hall
2015 First Avenue
Anoka, MN 55303
Phone: 763-576-2700

<u>5/20/24</u>
Date

**ORDER**

IT IS SO ORDERED this <u>4th</u> day of <u>June</u>, 2024.

_____
UNITED STATES DISTRICT COURT JUDGE

**EXHIBIT 1**

## APPENDIX A

### FULL AND FINAL RELEASE OF CLAIMS

In consideration for the parties' agreement to the terms of the Consent Decree entered into in the case of United States v. City of Anoka, Minnesota, Civil Action No. 0:24-cv-1861 (D. Minn.), as approved by the United States District Court for the District of Minnesota, and in consideration for the total payment of $[amount], plus any interest, I, [name], do hereby fully release and forever discharge the City of Anoka, as well as its agents, employees, or former employees from any and all fair housing claims set forth, or which could have been set forth, in the Complaint in this lawsuit that I may have had against any of them for any of the City's actions or statements related to those claims through the date of the entry of the Consent Decree.

Executed this _____ day of _____, 202__.
          [day]          [month]        [year]

_____
Signature

_____
Print Name

_____
Street Address

_____
City, State, and Zip Code

26